**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| SCOTTY H., | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) No. 4:24-cv-01083 PLC |
| | ) |
| FRANK BISIGNANO[1], | ) |
| **Commissioner of the Social Security** | ) |
| **Administration,** | ) |
| **Defendant.** | ) |

**MEMORANDUM AND ORDER**

Plaintiff Scotty H. seeks review of the decision of Defendant Social Security Commissioner Frank Bisignano denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Title II and Title XVI of the Social Security Act. For the reasons set forth below, the Court reverses the Commissioner's decision and remands for the case for further proceedings.

## I.    Background and Procedural History

On April 19, 2018, Plaintiff, who was born in August 1970, filed applications for DIB and SSI, alleging he was disabled as of October 30, 2014, as a result of "back issues[,]" spondylolisthesis at L4-L5, pseudoarthrosis after fusion, arthrodesis, sciatica on the left side, depression, and anxiety. (Tr. 122, 140, 338-350, 351-357, 387) The Social Security Administration (SSA) denied Plaintiff's initial claims for benefits and he filed a timely request for a hearing before

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted for Martin O'Malley as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 205(g) of the Social Security Act, 42 U.S.C. §405(g).

an administrative law judge (ALJ). (Tr. 121-138, 139-156, 167-168) The SSA granted Plaintiff's

request for review and conducted a hearing on September 6, 2022. (Tr. 47-103)

On June 13, 2023, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 8-31)

Plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council, which

denied review. (Tr. 1-7, 336-337) Plaintiff has exhausted all administrative remedies, and the

ALJ's June 2023 decision stands as the Commissioner's final decision. *Sims v. Apfel*, 530 U.S.

103, 106-07 (2000).

## II.   Evidence Before the ALJ[2]

### A.  September 6, 2022 Hearing

#### 1.  Discussions Regarding Completeness of the Record

Prior to adducing testimony, the ALJ inquired about the completeness of the record:

> ALJ: …So a couple of preliminary things. Mr. Wenner [(Plaintiff's counsel)], I don't have a five-day letter from you, but I also don't have any evidence since November 2018. So is there just no medical care in almost four years? Or what's going on there?
> ATTY: Well, Your Honor, in the last four years, it's been pretty much statis from the standpoint of any treatment other than continuing psychiatric work. And but nothing to do with the back fusion, the second element of this case.
> I was under the impression that the psychiatric material had been sent on, and I believe I sent it on, from Sullivan Hospital.
> ALJ: Oh, let's see. What's the last thing I have? I have -- you mean Missouri Baptist Sullivan?
> ATTY: Yes.
> ALJ: Last thing I have from them is from May 28, 2017. Oh, no, I'm sorry. There's one September 2018.
> ATTY: Well, my file is replete with additional material from the psychiatrist who visits the Sullivan facility at MO Bapt, and I can't explain why that's not in the file. I think we were still in …the faxing period, and I believe that I did have it sent on.
> ALJ: Okay. So I need a complete record up until now. Even if he was disabled back in 2014, he has to show continuing disability up until today.
> ATTY: Yes.

---

[2] Because Plaintiff's claim of error regarding his mental conditions is dispositive, the Court will primarily focus on the evidence of record related to these conditions.

ALJ: So I need to know what's missing so that I can keep the record open until it comes in.

ATTY: Yes, ma'am.

ALJ: Okay.

ATTY: And I would ask leave to bring it forward from – your last entry was?

ALJ: The last thing I have from Missouri Baptist Sullivan is September 14, 2018.

ATTY: 2018.

ALJ: Yes.

ATTY: Yes, I have that, and I'll bring it forward.

ALJ: Okay.

ATTY: With leave.

ALJ: Okay. All right. I just wrote myself a note. And are we not alleging disability for any physical problems?

ATTY: Well, we are looking for disability for the back situation.

…

ATTY: And that was surgery that was done in 2005. And I did bring with me what I know was not submitted before, and that was a spinal contrast done at Sullivan Hospital indicating the fusion.

ALJ: Okay. So the last treatment I have for physical pain is the same ER visit from September 2018 for anything physical.

ATTY: September 2018.

…

ALJ: So we need Missouri Baptist Sullivan.

Sir, have you been back to the St. Louis University Orthopedic Clinic since, gosh, 2018?

…

CLMT: Yes.

ALJ: Okay. So we'll need that, Mr. Wenner.

ATTY: St. Louis University?

ALJ: Yes. St. Louis University Orthopedic Clinic.

….

ALJ: Yes. The last note I have from them is -- let me make sure I have everything -- your May 29, 2018.

ATTY: May 29th.

…

ALJ: Okay. Not since then. All right. Okay. So other than updates from Missouri Baptist Sullivan and St. Louis U Orthopedics, any other doctors, hospitals, specialists, anything since 2018?

…

ALJ: Okay. So we're going to get everything from Missouri Baptist, physical, mental, everything since September 2018. Any other hospitals, [Barnes], other Mercy, anything?

…

ALJ: Okay. All right. So I haven't had the chance to request these things, so what I'm going to do is I'm going to keep the record open for 60 days so we can get

3

all of that in. If it -- Mr. Wenner, if it looks like it's all in early, just send along a letter that says the record's complete, and that will trigger my staff to send the file over to me.

ATTY: Okay. But you said 60 days?

ALJ: Is that -- do you need more time?

ATTY: I would like to have 80 days to get this --

ALJ: Okay.

…

ALJ: [If you need] more time, let me know. If you find yourself in a position where it's complete early, just let me know, and I'll post the record, and we'll move forward.

ATTY: Thank you, ma'am.

…

ALJ: And as we said, we'll keep the record open for 80 days for all the things that are missing.

(Tr. 50-55)

After all the witnesses testified, the ALJ again raised the absence of certain medical treatment notes from the record:

ALJ: Okay. So Mr. Henke, we're missing a lot of evidence, so Mr. Wenner's going to get that to me. When it comes in, I'll read through all of it and --

ATTY: I have my work cut out for me, Judge.

ALJ: Yes, there's quite a lot.

ATTY: I really can't explain this. I really can't.

ALJ: Sometimes things go wrong, usually with the uploads. These things happen.

…

ALJ: Okay. When all that comes in, I'll remind myself of what we talked about today, and I will, at that point, be able to make a decision. But the stuff that's missing, you're probably looking at three to four months until you get a decision.

ATTY: Understood.

(Tr. 102)

## 2. Plaintiff's Testimony

At the hearing, Plaintiff testified he lives with his wife, whom he married in 2010, and fourteen-year-old son. (Tr. 66-67) Plaintiff's prior two marriages ended in divorce and were "characterized by emotional outbursts" by Plaintiff. (Tr. 66) Plaintiff does not participate in any social activities where he interacts with other people except his wife and son. (Tr. 66, 74-75)

4

Plaintiff cannot bend over due to his back fusion surgery performed in 2015. (Tr.  67-68, 75) Plaintiff experiences pain in his back, knees, legs, and neck. (Tr.  69) Plaintiff's doctors have recommended he undergo another surgery to fuse his spine to his pelvic plate. (Tr.  70)

Plaintiff experiences a "pulling" pain down his left leg and tingling in his toes when sitting, which is relieved by lying down. (Tr.  72-73) The furthest Plaintiff can walk is from his bedroom to the bathroom and he is unable to walk on unlevel ground.  (Tr. 71, 74) Plaintiff has difficulty getting into a motor vehicle. (Tr.  68) Plaintiff does no laundry or shopping.  (Tr.  67-68) Plaintiff's wife sometimes helps him use the bathroom. (Tr.  74) Plaintiff spends his time laying down in a recliner in his bedroom. (Tr.  73)

Dr. Narsimha R. Muddasani. M.D., a psychiatrist, has been treating Plaintiff for his "lifelong depression" for "[q]uite a few years." (Tr.  76, 81) Dr. Muddasani prescribed Plaintiff Bupropion, Latuda, and a third medication for his depression and "inability to get along with others." (Tr.  76, 81) Plaintiff's depression causes him to "feel like doing nothing," and to dislike being around other people and get angry at them. (Tr.  79) Plaintiff did not know if Dr. Muddasani diagnosed Plaintiff with bipolar or post-traumatic stress disorder.[3] (Tr.  86) Plaintiff attempted suicide in 2017 by overdosing on his medications. (Tr.  82-83)

Plaintiff testified his co-workers, spouses, and children have "been subject to [his] anger." (Tr.  79)  Plaintiff had "difficulties in dealing with other people" while employed and his supervisors would "talk" to him about his anger at his co-workers. (Tr.  62, 64, 65) Plaintiff was fired from one position after he and his supervisor "got into it" and Plaintiff "went off on" his supervisor.  (Tr. 62, 64)  Plaintiff stated he was "always" fired because of his inability to work

---

[3] In response to Plaintiff's testimony on this point, the ALJ stated, "Okay. I'll look at the records when they come in. But what I'm mostly interested [in] is the effect and how that stopped him from working from 2014 forward." (Tr.  86-87)

5

with others and that he cannot be gainfully employed because employment "involves contact with other human beings." (Tr. 80) Plaintiff was incarcerated twice for violating the terms of his probation but was released from probation "sometime after 2017[.]" (Tr. 89-91)

### 3. Lisa Henke's Testimony

Lisa Henke, Plaintiff's wife (Wife), testified she and Plaintiff have been married since 2010. (Tr. 97) On at least four occasions, Wife moved out of the family home for time periods lasting from a few days to a "month or so[,]" because she could not "[l]ive with [Plaintiff]." (Tr. 97) Wife testified that when Plaintiff is "in pain" he becomes "a different person," who is more irritated, "[v]ery disturbed," and "[n]ot easy to get along with." (Tr. 97-98) Wife described Plaintiff's behavior in the work environment as unpleasant, inflexible, and angry. (Tr. 98-99) Wife testified Plaintiff spends his day in the bedroom and usually does not come out when people visit. (Tr. 100) Wife stated Plaintiff had not interacted with others "in a normal fashion" in the last five years. (Tr. 101)

### B. Function Reports

### 1. August 25, 2018 Report

In August 2018, Plaintiff reported that his conditions affect his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, understand, follow instructions, and get along with others. (Tr. 416) Plaintiff's daily activities include sitting and watching television, and attempting "to do something until the bad pain which is not long." (Tr. 412) Plaintiff wakes up in pain during the night and it is difficult for him to fall back asleep. (Tr. 412) Plaintiff sometimes needs assistance to bathe and dress but does not need any other assistance with maintaining his personal care. (Tr. 412) Plaintiff does not need reminders for his personal care or to take his medications. (Tr. 413) Plaintiff does not cook other than to make himself a sandwich once a week. (Tr. 413) Plaintiff performs no household chores or yardwork because he

is unable to bend, twist, or reach without causing pain. (Tr.  413) Plaintiff goes outside a few times per week but he does not go out alone because he is concerned about falling. (Tr.  414) Plaintiff drives and rides in the car. (Tr.  414) Plaintiff shops a few times per month, in five-to-thirty minute increments. (Tr.  414) Plaintiff pays bills, counts change, and handles a savings and checking account. (Tr.  414) Plaintiff does not spend time with others and has difficulty getting along with "everyone" because he is "crabby and very moody" from the pain. (Tr.  415)

Plaintiff does not follow written or verbal instructions well. (Tr.  416) Plaintiff reported getting along with authority figures well and never being fired from a job. (Tr.  416) Plaintiff does not handle stress or changes in routine very well. (Tr.  417) Wife assisted Plaintiff in completing the function report because he has "a hard time concentrating [and] understanding." (Tr.  421)

2.    August 16, 2018 Third Party Function Report

Wife reported that she spends all her time with Plaintiff and that they watch television, eat, and go shopping and to medical appointments. (Tr.  426) Wife stated Plaintiff spends his day sitting in his chair, drinking coffee, and watching television but that he will "do things until he is in too much pain to do anything." (Tr.  426) Wife reminds Plaintiff to take his medication and assists him with bathing and dressing. (Tr.  427) Plaintiff "does not like to be around anyone or go anywhere any more or do anything between the pain [and] the depression[.]" (Tr.  431) Plaintiff walks for approximately a block before needing to rest for a few minutes. (Tr.  431) Plaintiff's ability to pay attention depends on whether he is in pain, but Plaintiff finishes what he starts, and is "good" at following written and spoken instructions. (Tr.  431) Wife stated Plaintiff is good at getting along with authority figures and has not been fired from a job. (Tr.  431-432)

7

C. Prior Administrative Medical Findings of the State Agency Consultants[4]

The SSA's Disability Determination Explanations denying Plaintiff's initial claims for benefits, issued in November 2018, each contain the opinions of two state agency consultants. (Tr. 121-138, 139-156) Dr. James Morgan, Ph.D., the psychological consultant, found Plaintiff had a severe mental impairment which resulted in moderate limitations in the four broad functional areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (Tr. 128, 146) In rendering his opinion, Dr. Morgan considered Plaintiff's function report; Wife's third-party function report; the psychological consultative examinations conducted by Dr. Thomas Spencer in December 2015[5] and November 2018; medical records from May 27, 2017 through May 29, 2017 documenting Plaintiff's hospitalization following his suicide attempt; medical records demonstrating a lack of "significant psychiatric complaints" during physical examinations; and reports that Plaintiff was out of the house with family or at a "parent's day at his son's school" when he called Plaintiff's home. (Tr. 121-138, 139-156)

Dr. Dennis McGraw, DO, assessed Plaintiff's physical impairments. (Tr. 121-138, 139-156)Dr. McGraw opined Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently; stand or walk 4 hours and sit for 6 hours in an 8-hour workday; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; frequently stoop and crawl; balance, kneel, and crouch without limitations; and had no manipulative or environmental limitations. (Tr. 121-138, 139-156)

---

[4] State agency medical and psychological consultants' conclusions regarding a claimant's functional capabilities at the initial and reconsideration levels are referred to as prior administrative medical findings, rather than opinions. 20 C.F.R. §§ 404.1513a.

[5] This evaluation was conducted in reference to one of Plaintiff's prior applications for benefits and is not in the record before the Cout.

D.  Psychological Consultative Evaluation Dr. Thomas J. Spencer, Psy.D.

In November 2018, Dr. Thomas Spencer, Psy.D. performed a psychological consultative evaluation of Plaintiff. (Tr. 646-651) During the interview, Wife described Plaintiff's paranoia as "a long-term concern[,]" where he believes "someone might want to harm him[.]" (Tr. 646) Plaintiff stated he "questions if [Wife] is cheating when she leaves home[,]" "spends his day thinking and worry about these concerns," and has repeatedly accused Wife of infidelity. (Tr. 646) Plaintiff dwells on his paranoid beliefs and struggles "to stop the thoughts." (Tr. 647)

Plaintiff reported feeling "on edge and moody" and becoming "verbally aggressive" at the "slightest stressor." (Tr. 647) Plaintiff denied committing acts of physical aggression since he stopped drinking alcohol in 2014. (Tr. 647) Plaintiff isolates at home due to his pain and claimed minimal conflict with his three children who live at home. (Tr. 646-647) Plaintiff reported increased depression with accompanying agitation and loss of interest. (Tr. 647) During the interview, Plaintiff was tearful and expressed feelings of worthlessness, hopelessness, and helplessness. (Tr. 647)

Plaintiff experiences periodic suicidal thoughts and had one suicide attempt approximately two years earlier, which resulted in a psychiatric admission. (Tr. 647) Since the incident, Dr. Muddasani sees Plaintiff every other month for psychiatrist treatment and prescribed Wellbutrin for depression and Risperdal for "paranoia." (Tr. 646-47) Plaintiff questioned the effectiveness of the Wellbutrin, noting the dosage was recently increased. (Tr. 647) Dr. Spencer noted that he previously evaluated Plaintiff in December 2015, at which time he diagnosed Plaintiff with a mood disorder and polysubstance dependence in remission. (Tr. 647)

Plaintiff reported "some" trouble with fighting, skipping, and defiance in school. (Tr. 647) Dr. Spencer noted Plaintiff was employed with one company for 15 years and that he "got along well enough in the workplace to be foreman." (Tr. 647) Plaintiff has a history of alcohol and

9

substance abuse, but has been sober since 2014. (Tr.  648) Plaintiff reported "[a]rrests for domestic assault" and one felony conviction. (Tr.  648) Plaintiff violated his probation and spent six months in prison. (Tr.  648)

Dr. Spencer observed Plaintiff to be mildly anxious, but cooperative and not "overtly paranoid or grandiose." (Tr.  648) Plaintiff's eye contact was fair; his speech was normal; and he was alert and oriented to person, state, date, and event. (Tr.  648) Plaintiff's flow of thought, insight, and judgment were intact. (Tr.  648) Plaintiff appeared to be of low average or average intelligence and demonstrated "a questionable working knowledge of social norms." (Tr.  648) Plaintiff's hygiene was good, he ambulated without assistance and or obvious difficulty, and he did not appear to be in marked physical distress. (Tr.  648) Plaintiff recalled one of three items after a five-minute delay and did not appear to have long-term memory impairment. (Tr. 648) Plaintiff slowly completed serial 3's without error and was able to spell a five-letter word forward but not backward. (Tr.  648)

Dr. Spencer assessed Plaintiff with an unspecified mood disorder, and alcohol and "stimulate" use disorder in sustained remission. (Tr.  648) Dr. Spencer concluded Plaintiff had "problems related to the social environment" as well as occupational and economic "problems." (Tr.  648) Dr. Spencer opined Plaintiff demonstrated moderate impairment in his ability to learn, recall, and use information and to consistently stay on task. (Tr.  649) Dr. Spencer also found Plaintiff demonstrated moderate to marked impairment in his ability to relate to and work with others on a consistent basis. (Tr.  649)

E.  Medical Records

The record includes medical records from March 2016 through September 2022 which were presented to the ALJ. (Tr. 407-1494)  With respect to the issue of missing medical records, in November 28, 2022, Plaintif's counsel advised the ALJ that he "anticipated some

10

problems" with obtaining some of the records and requested an additional 45 days, or until January 13, 2023 to supply the records. (Tr.  485) On February 26, 2023, in response to correspondence from the ALJ regarding the records, Plaintiff's counsel requested an additional 30 days to supply the records after an SSA representative advised counsel to "box up the extensive records and mail" them to an SSA office out of state to be digitized and forwarded to the ALJ's office. (Tr.  486-87)

On March 31, 2023, a legal assistant in the ALJ's office completed a "Report of Contact" form stating she "contacted the rep today and he advised that exhibits B10F and B11F are his final submission and the records mention in 21E are these exact records." (Tr.  493) These exhibits are medical records from Missouri Baptist Hospital in Sullivan, dated from October 2018 through September 2022, totaling approximately 813 pages.  (Tr.  682-1070, 1071-1494) These exhibits reflect medical treatment for Plaintiff's physical conditions and do not contain any treatment notes from Dr. Muddasani. (Tr.  682-1070, 1071-1494)

### III.    Standards for Determining Disability Under the Social Security Act

Eligibility for disability benefits under the Social Security Act ("Act") requires a claimant to demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. §§ 423(a)(1), 1381a.  The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A); 1382c (a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).  The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...."  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

11

To determine whether a claimant is disabled, the ALJ engages in a five-step evaluation process. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). Those steps require a claimant to first show that he or she is not engaged in substantial gainful activity. *Id.* Second, the claimant must establish that he or she has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(a), (c); 416.920(a), (c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [the claimant's] ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001)). At step three, the ALJ considers whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R., Pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a), (d); 416.920(a), (d). If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d); 416.920 (d), (e).

Prior to step four, the Commissioner must assess the claimant's residual functional capacity (RFC), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. §§ 404.1545(a)(1)); 404.1520(a), (e); 20 C.F.R. §§ 416.920(e), 416.945(a)(1). RFC is "based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations." *Id.* (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006)).

At step four, the ALJ determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a), (f); 416.920(a), (f); *see McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, the claimant will not

12

be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. *McCoy*, 648 F.3d at 611.

Through step four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. 20 C.F.R §§ 404.1520(a), (g); 404.1560 (c); 416.920(a), (g); 416.960(c); *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012). If the claimant cannot make an adjustment to other work, then he or she will be found to be disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g).

## IV.    ALJ's Decision

Applying the five-step evaluation process, the ALJ found Plaintiff: (1) had not engaged in substantial gainful activity since February 8, 2017, the first day after the date of the denial of his last application for benefits; and (2) had the severe impairments of degenerative disc disease of the cervical and lumbar spines, major depressive disorder, and obesity. (Tr. 14) The ALJ concluded Plaintiff had the non-severe impairments of gastroesophageal reflux disease, sleep apnea, polysubstance abuse, and osteoarthritis of the right foot. (Tr. 14) At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15)

The ALJ completed the psychiatric review technique prescribed by the regulations for assessing the severity of Plaintiff's mental impairments.[6] The ALJ found Plaintiff's mental

---

[6] When a claimant has a mental impairment, the Social Security Act requires the ALJ to employ the psychiatric review technique when evaluating the severity of the claimant's mental impairments. *Cuthrell v. Astrue*, 702 F.3d 1114, 1117 (8th Cir. 2013) (citing 20 C.F.R. § 404.1520a(a), 416.920a(a)). The psychiatric review technique requires the Commissioner to "first evaluate [the claimant's] pertinent

13

impairments considered singly and in combination, did not meet or medically equal the criteria of the 12.04 listing of impairments because Plaintiff demonstrated only moderate limitations in the four broad functional areas under paragraph B of the listings. (Tr. 15-16) In doing so, the ALJ considered the function reports, Dr. Spencer's November 2018 consultative psychological evaluation, and Dr. Morgan's prior administrative medical findings. (Tr. 15-16)

Based on his review of the record, the ALJ determined Plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms but that his statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 18)  With respect to his mental health conditions, the ALJ found the record established no more than moderate limitations in mental functioning and failed "to support the severity of [Plaintiff's] allegations regarding his mental health." (Tr. 18-23) In support, the ALJ cited to the function reports, medical treatment records from Plaintiff's suicide attempt in 2017, Dr. Spencer's November 2018 consultative psychological evaluation, Dr. Morgan's prior administrative medical findings, a November 2018 internal medicine consultative examination, and medical treatment notes from physical examinations "generally observ[ing]…normal mood and affect[.]" (Tr. 18-24).

The ALJ determined Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations:

> never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. He can perform work requiring no concentrated exposure to hazards, such as unprotected heights. [Plaintiff] can

---

symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment(s)." *Id.* at 1118 (citing 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1)). The Commissioner then rates "the degree of functional limitation" in the following four broad functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. §§ 404.1520a(c), 416.920a(c).

maintain the attention required to perform simple tasks in a routine work setting and make simple, work-related decisions. He can adapt to few, if any workplace changes that are predictable and introduced gradually. He can perform work that is not at a fast pace such as on an assembly line but can stay on task and meet reasonable production requirements in an environment that allows for flexible and goal-oriented pace. He can perform work requiring no direct contact with the public and not more than occasional interaction with coworkers. His ability to tolerate and respond appropriately to supervision would be reduced, but adequate to handle ordinary levels of supervision in the described work setting.

(Tr.  17)

At step four, the ALJ found Plaintiff unable to perform his past relevant work. (Tr.  24) Based on the RFC, Plaintiff's age, education, and prior work experience, and the vocational expert's testimony, the ALJ found Plaintiff was able to perform jobs that existed in significant numbers in the national economy, such as hand packer, cleaner, and production worker. (Tr. 24-25) The ALJ therefore concluded Plaintiff was not disabled. (Tr. 25-26)

## V.    Discussion

Plaintiff argues the ALJ did not fulfill her duty to fully and fairly develop the record by failing to obtain medical records from Plaintiff's treating psychiatrist Dr. Muddasani. [ECF No. 10] Plaintiff further contends that the ALJ's RFC is not supported by substantial evidence because the ALJ relied on her own interpretation of the medical examinations and an outdated prior administrative medical finding to support the RFC. [ECF No. 10]

The Commissioner responds that the ALJ's RFC is supported by substantial evidence and that the ALJ adequately developed the record. [ECF No. 11] The Commissioner further contends that remand for further development of the record is unnecessary because the record contains sufficient evidence to support the ALJ's determination and Plaintiff failed to demonstrate he was prejudiced or treated unfairly as a result of the ALJ's alleged failure to develop the record. [ECF No. 11]

### A.  Standard of Judicial Review

15

This Court must affirm the Commissioner's decision if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome." *Id.* (quoting *Prosch*, 201 F.3d at 1012) (internal quotation marks omitted).

A court does not "reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). Therefore, a court must affirm the ALJ's decision if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]" *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)).

B. Duty to Develop the Record

Plaintiff contends the ALJ erred by failing to fully and fairly develop the record. [ECF No. 10] Specifically, Plaintiff argues the ALJ had a duty to obtain psychiatric treatment notes from Dr. Muddasani because the ALJ was aware that Dr. Muddasani was treating Plaintiff for his mental health conditions and the treatment notes were missing from the record. [ECF No. 10] Plaintiff contends the ALJ's reliance on Plaintiff's counsel's post-hearing representation that the record was complete does not excuse the ALJ's failure to adhere to her duty. [ECF No. 10]

16

The Commissioner counters that it was unnecessary for the ALJ to obtain treatment records from Dr. Muddasani because Plaintiff's counsel stated he would submit the records to the ALJ; counsel submitted additional records from Missouri Baptist Hospital in Sullivan where Dr. Muddasani treated Plaintiff; and counsel advised a legal assistant in the ALJ's hearing office that the additional records were his "final submission." [ECF No. 11] The Commissioner asserts that under these circumstances, "it was reasonable for the ALJ to assume that all necessary records from this facility were included[.]" [ECF No. 11] The Commissioner further asserts that Plaintiff has failed to demonstrate he was prejudiced or treated unfairly by the ALJ's development of the record because the record contained sufficient evidence for the ALJ to make an informed decision. [ECF No. 11]

A claimant for Social Security disability benefits is responsible for providing medical evidence demonstrating the existence of an impairment, its severity during the period of disability, and how the impairment affects the claimant's functioning. 20 C.F.R. §§ 404.1512(a), 416.912(a); *Vossen v. Astrue,* 612 F.3d 1011, 1016 (8th Cir. 2010) (holding that the burden of persuasion to prove disability and demonstrate RFC remains on the claimant). However, the administrative process is not an adversarial proceeding, and the Commissioner and the claimant's attorney both share the goal of ensuring "deserving claimants who apply for benefits receive justice." *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994).

The ALJ has an independent duty to fully and fairly develop the administrative record to make a fair determination as to whether disability exists even where the claimant is represented by counsel. *Id.* The ALJ's duty, however, is not endless, and an ALJ is not required to disprove every possible impairment. *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). "There is no bright line test for determining when the [Commissioner] has…failed to develop the record. The determination in each case must be made on a case by case basis." *Battles,* 36 F.3d at 45 (internal

quotations omitted).  "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013). (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)). "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Twyford v. Commissioner, Social Security Administration,* 929 F.3d 512, 517 n.3 (8th Cir. 2019) (citing *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995)).

In this case, Plaintiff repeatedly identified his mental health impairments as a basis for seeking benefits and Dr. Muddasani as his treatment provider.  This includes in paperwork filed with SSA in August 2018, February 2020, and September 2022.  (Tr.  390-391, 480, 484) Dr. Spencer's November 2018 consultative psychological evaluation identified Dr. Muddasani as Plaintiff's treating psychiatrist, specifically stating Plaintiff saw Dr. Muddasani every two months since Plaintiff's suicide attempt and resulting psychiatric admission two years earlier. (Tr.  647) At the hearing, Plaintiff testified at length about his limitations resulting from his mental health conditions and his ongoing psychiatric treatment with Dr. Muddasani which began more than five years earlier after Plaintiff's suicide attempt. (Tr.  66-91)

Prior to taking testimony at the hearing, the ALJ specifically raised the issue of the completeness of the record, inquiring why the record did not contain any medical treatment notes after September 2018. (Tr.  50-55) It was established at that time that a multitude of records remained unsubmitted, including records from Missouri Baptist Hospital related to Plaintiff's physical impairments as well several years of records regarding Plaintiff's psychiatric care with Dr. Muddasani. (Tr.  50-55, 102)

The ALJ agreed to leave the record open to allow counsel to submit the missing records and counsel submitted approximately 813 pages of additional medical records from Missouri

Baptist Hospital, labeled as exhibits B10F and B11F.  (Tr.  50-55, 102, 682-1070, 1071-1494)

Although counsel stated that these were the missing records, counsel's representation was

inaccurate and these exhibits do not contain any treatment notes from Dr. Muddasani.  Instead, the

only treatment notes from Dr. Muddasani found anywhere in the administrative record encompass

a two-page consultation note dated May 28, 2017, from the two-day period in which Plaintiff was

hospitalized after his suicide attempt. (Tr.  582-83, 652-53) Records relating to Dr. Muddasani's

treatment for the succeeding five years are not in the record.

Contrary to the Commissioner's assertions, the absence of these records was clear and

nothing in the record demonstrates that the ALJ attempted to obtain these records in spite of the

inadequacy of the record. While a claimant has the responsibility of providing medical evidence,

the administrative process is not adversarial and the ALJ has an independent duty to fully and

fairly develop the record. *Battles*, 36 F.3d at 44. This is not a case where the ALJ is being asked

to collect evidence to disprove every possible impairment, but one in which the disabling

conditions were consistently identified as a basis for benefits and Plaintiff's long-term treating

provider was clearly identified.  "[W]here, as here, 'it is obvious that the record did not contain all

the relevant medical records," the ALJ cannot reasonably rely on the claimant's (or his attorney's)

statement to the contrary." *Harris v. O'Malley*, No. 4:23-cv-00287-AGF, 2024 WL 1989017, at

*4 (E.D. Mo. May 6, 2024) (quoting *Cox v. Apfel*, 160 F.3d 1203, 1209 (8th Cir. 1998).

The other evidence of record regarding Plaintiff's mental health conditions is sparse and

does not compensate for the absence of Plaintiff's treatment records. While the record contains the

prior administrative medical finding of Dr. Morgan, he did not have the benefit of Plaintiff's

mental health treatment records in rendering his opinion and instead relied on the function reports,

the limited treatment notes following Plaintiff's suicide attempt, physical examination records, and

Dr. Spencer's consultative psychological evaluation.  Dr. Spencer, in turn, relied upon much of

19

the same information in rendering his opinion, with the addition of his prior evaluation and a clinical interview. (Tr.  646-649) Thus, none of the evidence before the ALJ was informed by treatment notes documenting Plaintiff's five years of mental health treatment, and the ALJ did not have the treatment notes when evaluating the other evidence of record and in assessing the impact of Plaintiff's conditions on his ability to function in the workplace.  Here, the absence of the missing treatment notes left a crucial issue undeveloped and the record did not contain enough evidence for the ALJ to determine the impact of Plaintiff's impairment on his ability to work. Accordingly, the Court reverses the Commissioner's decision and remands the case to give the ALJ an opportunity to more fully develop the record.   Because the ALJ will need to consider the additional medical evidence in conjunction with the other evidence of record in reevaluating Plaintiff's RFC, the Court need not address Plaintiff's claim that the ALJ's RFC is not supported by substantial evidence.

## VI.    Conclusion

Accordingly, for the reasons set forth above,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED**, and the case is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Order.

A separate judgment in accordance with this Memorandum and Order is entered this date.

_____

PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 24th day of April, 2026